UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

RICHARD SCOTT THIEL,                    )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        No.  2:16 CV 73 CDP
                                        )
SHERIFF STEPHEN KORTE, et al.,          )
                                        )
                Defendants.             )

## MEMORANDUM AND ORDER

In October 2013 and November 2014, deputies of the Pike County, Missouri

Sheriff's Office executed search warrants on plaintiff Richard Scott Thiel's property.

They seized various items and arrested Thiel.   In this action, Thiel brings claims

against Pike County Sheriff Stephen Korte and Deputy Sheriffs Joseph Minor and Josh

Baker under 42 U.S.C. § 1983, alleging that the searches and seizures, including his

arrest, were unlawful under the Fourth and Fourteenth Amendments and that Sheriff

Korte's continued retention of his seized property violates his Fourteenth Amendment

due process rights.   Thiel also seeks a writ of replevin under Missouri law for return of

his property.   For the reasons that follow, I will grant defendants' motion for summary

judgment on Thiel's constitutional claims, and deny Thiel's motion for partial

summary judgment.[1]   I decline to exercise supplemental jurisdiction over Thiel's state

law claim.

---

[1] Thiel seeks judgment on only the alleged unlawful search and seizure that occurred in October 2013.

## Legal Standard

In determining whether to grant summary judgment, I must view the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must, by affidavit or other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Instead, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal-Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

## Evidence Before the Court on the Motions

Plaintiff Thiel owns several acres of property in Pike County, Missouri. His

residence and at least four other buildings used for business and farming are on a parcel of property located at 16644 Pike 9166, Louisiana, Missouri. Thiel's business is managing foreclosed properties, which includes general maintenance, making repairs, and removing abandoned property, including abandoned vehicles. He stores several abandoned vehicles on his property at 16644 Pike 9166. Thiel has no employees but hires several individuals as independent contractors on an as-needed basis. His friend, Amanda Sherwin, is his business partner.

October 2013 Search and Seizure

On October 8, 2013, Deputy Minor received information that a white Ford Expedition that had been stolen from Enid, Oklahoma, was on Thiel's property. The following day, Deputies Minor and Baker went onto the property of Thiel's neighbor, from where they saw a white Ford Expedition located toward the rear of Thiel's property. Minor and Baker then went on to Thiel's property and took photographs of the vehicle. Minor thereafter contacted the Enid, Oklahoma Police Department who confirmed that the description of the Ford Expedition on Thiel's property matched the description of the vehicle stolen from Enid in July 2013. Minor then submitted an affidavit to the Pike County Prosecuting Attorney, who applied for a search warrant for Thiel's property related to the stolen vehicle.

On October 10, 2013, a circuit judge issued a search warrant authorizing a search of Thiel's property and the seizure of the "2003 White Ford Expedition, VIN 1FMPU17L93LB45057." Minor and Baker and other deputies executed the warrant

that same day and seized the vehicle. Minor observed that the keys were not in the vehicle, so the search of Thiel's property continued for the keys. A Ford key and key-fob were eventually located in a shed on the property and seized.

During the execution of the search warrant, the deputies noted a camera surveillance system on Thiel's property. They then located in Thiel's house a digital video recorder (DVR) and related equipment that was connected to the surveillance system. Believing the equipment could contain recorded evidence of the Ford vehicle coming onto the property, the deputies seized the DVR, two external hard drives, and ten computer memory cards. (Minor Depo., ECF 44-4 at pp. 52-53; Baker Depo., ECF 44-6 at p. 26.) Thiel claims, and defendants deny, that the deputies also seized two pistols and $200 cash. The computer memory cards were later returned to and retrieved by Amanda Sherwin. Defendants claim, and Thiel denies, that the hard drives, recording system, and Ford key and key-fob were also returned to Sherwin.

Thiel was not home when the search of his property began. Upon learning of the search, he attempted to go home but was stopped by Deputy Carroll (not a defendant) when he entered his driveway. Deputy Carroll then arrested him. (ECF 44-2, Thiel Depo. at pp. 81-83.) Thiel was released from the sheriff's office later that evening. (*Id.* at pp. 95-96.)

Defendant Korte did not personally conduct any search of Thiel's property on October 10.

No criminal proceedings were ever brought against Thiel relating to the white

Ford Expedition or the October 10 search of his property.

November 2014 Search and Seizure

During the evening hours of November 28, 2014, Bonnie Murray traveled to Thiel's residence with Nicholas Echternkamp and Darren Jones to collect checks from Thiel for work they had performed for him. Murray went into the house to ask about the checks; Echternkamp and Jones stayed in their truck, which was parked on the road at the end of the driveway. Thiel gave Murray her check but did not give checks for either Echternkamp or Jones. After Murray got her check, she left the residence and walked down the driveway toward the road, at which time she heard what she thought were gunshots coming from the house. Believing that Thiel was shooting at her, Murray ran to the truck and she, Echternkamp, and Jones drove away from the property. Murray called 911 and reported that Thiel shot at her when she was leaving his residence. Murray, Echternkamp, and Jones then met with Pike County deputy sheriffs and gave statements. In her statement, Murray also described the firearm she observed on Thiel when she retrieved her check from him.

Upon receiving the report, Minor and Baker went to Thiel's residence and spoke to Thiel about the alleged incident. Thiel told them that he could not shoot a firearm because of arthritis, but later said that he fired a shotgun that morning to scare cats from his porch. Thiel was then advised that he would be detained and that an application would be made to obtain a search warrant for the house. Thiel was taken into custody and transported to the sheriff's office.

Minor submitted an affidavit for search warrant to the prosecuting attorney along with affidavits from Murray, Echternkamp, and Jones, each stating that Thiel had discharged a firearm in Murray's direction. An associate circuit judge issued a search warrant granting authority to search the residence and seize "any and all handguns and evidence of a firearm being fired at the residence in the last 7 hours including but not limited to a gunshot residue test of Richard Scott Thiel and the clothes of Richard Scott Thiel for purposes of testing for gunshot residue." Minor and Baker and other deputies executed the warrant at Thiel's residence and seized various handguns, holsters, two .38 caliber rounds, and a Samsung DVR.[2] Thiel's clothing and shoes were seized from Thiel at the sheriff's office to test for the presence of gunshot residue. Thiel was released from the sheriff's office a few hours after being taken into custody. (Thiel Depo., ECF 48-2 at p. 130.)

Defendant Korte did not personally conduct any search of Thiel's property on November 28.

No criminal proceedings were ever brought against Thiel relating to the alleged shooting or the November 28 search of his property. None of the property seized on November 28 has been returned to Thiel.

## Discussion

Thiel raises several Fourth Amendment claims challenging the search of his

---

[2] Thiel testified that jewelry and coins were also taken, but he raises no claim regarding this property in his complaint. (Thiel Depo., ECF 48-2 at pp. 126-29.)

property, the seizure of his personal property, and his arrest. In addition to his claims against the defendants in their individual capacities, Thiel alleges that the unlawful searches were conducted under official policy, or custom or practice, as promulgated by Korte. He also challenges Korte's refusal to return his seized property, claiming that such deprivation violates his Fourteenth Amendment right to due process.

For the reasons that follow, I agree with defendants that Minor and Baker are entitled to qualified immunity on Thiel's Fourth Amendment claims, and Korte is entitled to summary judgment in both his individual and official capacities. I also agree that the State of Missouri provides an adequate post-deprivation remedy that satisfies due process, and that Thiel has failed to avail himself of this remedy. I will therefore grant summary judgment on Thiel's constitutional claims.

A.    Fourth Amendment Search and Seizure

As an initial matter, to the extent Thiel seeks individual liability against Korte for the alleged unlawful searches, Korte is entitled to summary judgment. The evidence is undisputed that Korte did not personally participate in any search of Thiel's property on either October 10, 2013, or November 28, 2014; and Thiel does not allege that Korte failed to supervise and train his officers. *See Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) (supervisors can be individually liable if they directly participate in a constitutional violation or if they failed to supervise and train officers).

With respect to defendants Minor and Baker, they are entitled to qualified

immunity on Thiel's Fourth Amendment claims.[3]

In § 1983 actions, an individual defendant is entitled to qualified immunity if his conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam). To be clearly established, preexisting law must make the unlawfulness of the officials' conduct apparent so that they have "fair and clear warning" they are violating the Constitution; qualified immunity therefore protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 551-52. Because qualified immunity protects officials who make bad guesses in gray areas, *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004), it gives them breathing room to make reasonable but mistaken judgments. *Blazek v. City of Iowa City*, 761 F.3d 920, 922 (8th Cir. 2014).

Thiel has the burden of showing that the law was clearly established, *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013), and that existing precedent places the constitutional question "'beyond debate.'" *City & Cty. of S.F., Calif. v. Sheehan,* 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). However, "'clearly established law should not be defined at a high level of generality' and must be particularized to the facts of the case so that the unlawfulness of an official's actions [is] apparent." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1061 (8th Cir. 2018) (quoting *White*, 137 S. Ct. at 552). "Context is critical in determining

[3] My reference to "defendants" in this section of the discussion is to Minor and Baker only, given that Korte cannot be individually liable on the claims.

- 8 -

qualified immunity in Fourth Amendment cases." *Id.* (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)).

    1.    *October 2013 Search and Seizure*

With respect to the October 2013 search and seizure, Thiel claims:   a) that the defendants exceeded the scope of the search warrant when they continued to search his property after seizing the target vehicle; b) that the defendants unlawfully seized personal property that was neither authorized to be seized by nor reasonably related to the warrant; c) and that his arrest was unlawful because it was made without a warrant and without probable cause.

    a.    <u>*Exceeding Scope*</u>

Based upon a finding of probable cause "that the crimes of stealing and/or receiving stolen property has been committed and that evidence of that crime . . . is/are concealed in or on certain premises, vehicles or persons," a judge issued a search warrant commanding that a search be conducted of "the premises, curtilage, vehicle or person; to include but not limited to 16644 Pike 9166, Louisiana, MO," and that a "2003 White Ford Expedition, VIN 1FMPU17L93LB45075," if located, be seized. (Defts.' Exh. K, ECF 41-11.)   Thiel claims that execution of the warrant was complete when defendants located and seized the only item named in the warrant – the vehicle – and that defendants exceeded the scope of the warrant when they continued to search his property after seizing the vehicle.   Defendants argue that they are entitled to qualified immunity on this claim.   I agree.

In order to show that defendants are not entitled to qualified immunity with regard to the execution of the warrant, Thiel must establish that from the perspective of a reasonably objective law enforcement official on the scene, defendants' conduct was not objectively reasonable. *Graham v. Connor,* 490 U.S. 386, 396-97 (1989); *Walden v. Carmack*, 156 F.3d 861, 873 (8th Cir. 1998). "The searching officers' subjective motivations are irrelevant." *United States v. Valencia*, 499 F.3d 813, 815 (8th Cir. 2007). The correct inquiry is whether, even construing the facts in a light most favorable to Thiel, a reasonable official in the defendants' position would have known that he was violating the Constitution by continuing to search Thiel's property in the particular circumstances of this case. *Estate of Walker*, 881 F.3d at 1060. Viewing the circumstances here in a light most favorable to Thiel, the defendants' continued search of the premises was reasonable.

Both Minor and Baker testified that they consider keys to a vehicle to be part and parcel of that vehicle, especially in the circumstances here where they had information that the vehicle in question had been driven onto Thiel's property. (Minor Depo., ECF 44-4 at pp. 39-41, 55-56; Baker Depo., ECF 44-6 at pp. 21, 23.) They thus considered that the search warrant – which was based on a probable cause finding that evidence of the crime of receiving stolen property was present on "certain premises, vehicles or persons," and permitted a search of the premises, curtilage or persons – authorized their search for the keys of the stolen Ford Expedition. This is not unreasonable. The fact that the search was extensive does not alone make it unreasonable. *Walden*, 156 F.3d

at 873.

An objectively reasonable officer could believe that the warrant issued here authorizing a search for a stolen vehicle encompassed a search for the keys to that vehicle, especially given the known circumstance that the vehicle had been driven onto the property.   Because Thiel has failed to show that in the particularized facts of this case, the unlawfulness of the continued search was apparent, defendants are entitled to qualified immunity on Thiel's claim that the continued search of his property after the vehicle was seized was unlawful.

>   b.   *Seizure of Property Not Named in Warrant*

In addition to the vehicle, defendants seized a Ford key and key-fob, a DVR, two external hard drives, and ten computer memory cards.   None of these items was named in the search warrant as property to be seized.

> When executing a search warrant, a law enforcement official must have probable cause to believe that items seized in connection with a valid search warrant are associated with suspected criminal activity.   Probable cause demands only that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or *useful as evidence of a crime*.   *Items not mentioned in a warrant may be seized so long as they are reasonably related to the crime for which the warrant issued*.

*Stepnes v. Ritschel*, 663 F.3d 952, 962 (8th Cir. 2011) (internal quotation marks and citations omitted) (emphasis added).

When defendants located the Ford Expedition – the subject of the warrant – Minor observed that there was no key in the ignition.   With the discovery of a Ford key

and key-fob in a shed located on the property, a reasonable officer could conclude that the key(s) belonged to the stolen Ford Expedition and thus constituted evidence of the crime of stealing or receiving stolen property.   Because a reasonable officer could believe that the keys were related to the crime for which the warrant issued, the seizure of the keys was reasonable.

During the search for the vehicle, Baker observed that surveillance cameras were located on Thiel's property.   (Baker Depo., ECF 41-4 at pp. 22, 26-27.)   During the continued search for the vehicle's keys, a video surveillance recording system and related equipment were discovered in plain view in Thiel's house.   Based on the observation of surveillance cameras located on Thiel's property, a reasonable officer could conclude that the system recorded the stolen vehicle being brought onto the property and the individual(s) who did so.   Because a reasonable officer could believe that the recording device and related equipment contained evidence relating to the crime for which the warrant issued, the seizure of the recording device and equipment was reasonable.

Defendants are therefore entitled to qualified immunity on Thiel's claims that they unlawfully seized the Ford keys, DVR, and related video/electronic equipment.

Thiel also claims that the defendants unlawfully seized pistols and $200 cash during their search of his property.   No one saw the defendants or anyone else take these items, but Thiel noticed the morning after the search that they were missing. (Thiel Depo., ECF 44-2 at pp. 93-96.)   While Thiel "imagines" that either Minor or

Baker took the items because they conducted the search in the relevant area, he admits that he does not know "how many cops were up there." (*Id.* at p. 94.) Neither the pistols nor cash were listed on the evidence log of seized property (*see* ECF 44-7), and Minor testified that all of the property seized during the October 10 search was listed on the log (Minor Depo., ECF 44-4 at pp. 48-50.) He also attested that no member of the sheriff's department seized any property that was not listed on the log. (Minor Affid., ECF 41-7 at ¶ 35.)

To withstand summary judgment, Thiel must "substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (internal quotation marks and citation omitted). Presenting a mere scintilla of evidence is insufficient. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). Thiel offers only speculation that the defendants unlawfully seized pistols and cash during the execution of the warrant. His "imagined" suspicion of either Minor or Baker, despite not knowing who all was present, and his observation made several hours after the search ended that the items were missing amount to nothing more than a scintilla of evidence, if that. On this evidence, no reasonable factfinder could return a verdict for Thiel on this claim without engaging in speculation or conjecture. Defendants are therefore entitled to summary judgment to the extent Thiel claims they unlawfully seized pistols and $200 cash. *Id.* at 249-50; *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992).

c.    _Arrest_

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause.   Probable cause exists when the facts and circumstances within the officers' knowledge . . . were sufficient to warrant a prudent person in believing that an offense has been committed.

_Stepnes_, 663 F.3d at 960 (internal quotation marks and citations omitted).   "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'"   _Borgman v. Kedley_, 646 F.3d 518, 523 (8th Cir. 2011) (quoting _Amrine v. Brooks_, 522 F.3d 823, 832 (8th Cir. 2008)).   Whether probable cause exists is a question of law to be "determined at the moment the arrest is made, and 'any later developed facts are irrelevant to the . . . analysis.'"   _Hosea v. City of St. Paul_, 867 F.3d 949, 955 (8th Cir. 2017) (quoting _Gilmore v. City of Minneapolis_, 837 F.3d 827, 833 (8th Cir. 2016)).

At the time of Thiel's arrest, Mo. Rev. Stat. § 570.080 (2013) provided that "[a] person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he or she receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen."   Evidence that the alleged receiver "obtained control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce a person to believe the property was stolen" is relevant to the requisite knowledge or belief.   Mo. Rev. Stat. § 570.080.2(4) (2013).   When Deputy Carroll effectuated

Thiel's arrest, deputies on the scene were aware that a stolen vehicle had been located on Thiel's property over which Thiel had control. *United States v. Edwards*, 891 F.3d 708, 711 (8th Cir.) (probable cause may be based on the collective knowledge of all law enforcement officers involved in investigation), *cert. denied*, 139 S. Ct. 349 (2018). Deputy Carroll was not required to conduct a mini-trial at the time of the arrest to determine whether Thiel possessed the state of mind required for the crime. *Borgman*, 646 F.3d at 523-24. Thiel's later statement that he did not know the vehicle was stolen does not render the arrest unreasonable. *See id.*; *see also Hosea*, 867 F.3d at 955 (any later developed facts are irrelevant to the probable cause analysis).

In view of the totality of the circumstances, there was at least arguable probable cause to arrest Thiel. Defendants are therefore entitled to qualified immunity on this claim.

2. *November 2014 Search and Seizure*

With respect to the November 2014 search and seizure, Thiel claims: a) that the search warrant itself was defective; b) that the defendants unlawfully seized personal property that was not reasonably related to the warrant; c) and that his arrest was unlawful because it was made without a warrant and without probable cause.[4]

---

[4] To the extent Thiel also alleges in his first amended complaint that defendants unlawfully searched the contents of his computer, DVR, and other electronic media without a warrant (ECF 34 at ¶ 76), I note that he seeks relief only for the alleged unlawful searches of his *real* property. (*Id.* at p. 13.) Because Thiel does not seek relief for any alleged unlawful search of his personal property, I do not address this allegation.

a.    _Validity of Warrant_

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

To be valid, a search warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause may be found in the place to be searched.  _Johnson v. United States_, 333 U.S. 10 (1948); _Warden v. Hayden_, 387 U.S. 294 (1967).   The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  _Illinois v. Gates_, 462 U.S. 213, 232 (1983).   "In dealing with probable cause, . . . as the very name implies, we deal with probabilities.   These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  _Brinegar v. United States_, 338 U.S. 160, 176 (1949).   Probable cause may be found in hearsay statements from reliable persons, _Gates,_ 462 U.S. at 245, or in observations made by trained law enforcement officers, _McDonald v. United States,_ 335 U.S. 451, 454 (1948).   In determining whether probable cause exists for the issuance of a search warrant, the information contained in applications and affidavits in support must be examined in the totality of the circumstances presented.  _Gates_, 462 U.S. at 230.

Here, contrary to Thiel's assertion, there was sufficient probable cause to issue the search warrant. Thiel admits that the application for search warrant included Minor's affidavit as well as affidavits by Murray, Echternkamp, and Jones each stating that Thiel discharged a firearm in Murray's direction. (*See* Pltf.'s Resp. to Mat. Facts, ECF 49 at ¶ 31.) The affidavits from witnesses to a crime are sufficient to provide probable cause to issue the warrant in this case, that is, to search Thiel's residence for evidence of a recently discharged firearm. *See United States v. Solomon*, 432 F.3d 824, 828 (8th Cir. 2005) (affiant attested to personally seeing evidence of a crime in place to be searched). Minor's reliance on these witnesses' statements in support of his own affidavit does not lessen the probable cause finding. *United States v. Wallace*, 550 F.3d 729, 734 (8th Cir. 2008) (law enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication the information is not reasonably trustworthy or reliable.)

Nor does Thiel's assertion that the individual witnesses were intoxicated defeat summary judgment on the probable cause finding. As his only support for this assertion, Thiel testified that "Joey" (presumably defendant Minor) told him that Murray, Echternkamp, and Jones had been drinking and were drunk when they made their report. (Thiel Depo., ECF 44-2 at pp. 118-20.) Murray testified, however, that no one had been drinking that night (Amman Depo., ECF 48-8 at pp. 21, 28),[5] and

---

[5] When she was deposed in March 2018, Bonnie Murray explained that her surname was currently "Amman" because of a change in marital status. (ECF 48-8 at p. 5.)

Minor testified that none of the individuals were intoxicated when he spoke to them (Minor Depo. ECF 48-3 at p. 89).   Thiel cannot rely on inadmissible hearsay to counter defendants' undisputed and competent evidence that the individual witnesses were neither drunk nor observed to be drunk during the relevant time.   *Mason v. Correctional Med. Servs., Inc.*, 559 F.3d 880, 885 (8th Cir. 2009) (nonmoving party cannot rely on inadmissible hearsay to avoid summary judgment).

Thiel's additional claim that the warrant failed to specify the place to be searched or the items to be seized is without merit.   The warrant here clearly specified "the premises, curtilage, vehicle or person; to include but not limited to 16644 Pike 9166, Louisiana, MO," and the "person of Richard Scott Thiel" as the place to be searched.   It also clearly specified "any and all handguns and evidence of a firearm being fired at the residence in the last 7 hours" and "the clothes of Richard Scott Thiel" as items to be seized.   *United States v. Steele*, 267 U.S. 498, 503-04 (1925) (warrant must be sufficiently definite so as to enable the officer to reasonably ascertain and identify the objects to be seized).   There is no clearly established law putting the deputies on notice that their search of the residence at the location identified in the warrant[6] and their seizure of items specifically listed in the warrant, namely handguns and Thiel's clothing, as well as other items reasonably related to the crime, namely other firearms, holsters, and electronic equipment possibly containing evidence of the

---

[6] Indeed, the warrant gives a detailed physical description of the residence located at 16644 Pike 9166:   "The domicile is a brown two story home with a white roof."   (Defts.' Exh. L, ECF 41-12.)

crime, violated the Fourth Amendment. Further, in the circumstances of the case, the

authorization to seize all handguns and evidence of a firearm recently being discharged

was not overbroad. *Messerschmidt v. Millender*, 565 U.S. 535, 548-49 (2012).

Because clearly established law does not show that the warrant here lacked

particularity, the deputies are entitled to qualified immunity on Thiel's claim arising

out of their participation in the search. *Doe v. Olson*, 691 F. App'x 272, 274-75 (8th

Cir.), *cert. denied sub nom. Doe v. Goodman*, 138 S. Ct. 336 (2017).

Accordingly, defendants are entitled to qualified immunity on Thiel's claim that

they searched his property on November 28, 2014, without a validly issued search

warrant.

b. *Seizure of Property Not Reasonably Relating to Search*

Based upon a finding of probable cause "that the crime of unlawful use of a

weapon has been committed and that evidence of that crime . . . is/are concealed in or

on certain premises, vehicles or persons," a judge issued a search warrant commanding

that a search be conducted of "the premises, curtilage, vehicle or person; to include but

not limited to 16644 Pike 9166, Louisiana, MO," as well as the "person of Richard

Scott Thiel." (Defts.' Exh. L, ECF 41-12.) The warrant authorized the seizure, if

located, of "any and all handguns and evidence of a firearm being fired at the residence

in the last 7 hours including but not limited to a gunshot residue test of Richard Scott

Thiel and the clothes of Richard Scott Thiel for purpose of testing for gunshot residue."

(*Id.*) Thiel claims that defendants exceeded the scope of the warrant when they seized

a DVR and holsters, given that they were not related to the alleged shooting incident. Thiel also claims that the defendants' seizure of new and unopened boxes of firearms was outside the scope of the warrant because such items could not be reasonably associated with the investigation of Thiel's alleged unlawful use of a firearm. Defendants contend that they are entitled to qualified immunity on this claim. I agree.

As discussed above, defendants were aware that surveillance cameras were located on Thiel's property, including at the front of the residence. (*See* Baker Depo., ECF 44-6 at p. 27.) A reasonable officer could therefore conclude that the video surveillance system recorded activity that occurred in that area, including Thiel's alleged shooting of a firearm from his residence in Murray's direction. Because the warrant authorized the seizure of "evidence of a firearm being fired at the residence in the last 7 hours," a reasonable officer could believe that the recording device and related equipment contained such evidence. The seizure of the recording device and equipment was reasonable.

The seizure of the holsters was likewise reasonable. Murray testified that she observed Thiel wearing a gun on his side when she was in his residence, that she later told the deputies what occurred at the residence, and provided a description of the gun Thiel was wearing. (Amman Depo., ECF 41-6.) Given this information that Thiel was wearing a firearm on his side immediately before the alleged shooting, a reasonable officer would seize holsters as evidence reasonably related to the crime for which the warrant was issued. Thiel's testimony at his March 2018 deposition that he

never wears a holster does not alter the reasonableness of defendants' conduct regarding the search. *Cf. Hosea*, 867 F.3d at 955 (any later developed facts are irrelevant to the reasonableness of defendants' conduct).

Finally, a reasonable officer could construe the warrant's authorization to seize "any and all handguns and evidence of a firearm being fired at the residence" to encompass the seizure of new and unopened boxes of firearms. Minor testified that all firearms seized on November 28, whether or not in boxes, were suspected of being the firearm Thiel allegedly used that night and were therefore seized. (Minor Depo., ECF 44-4 at pp. 105-06.) Given the express terms of the warrant, this action was reasonable. To expect an officer to discern on site whether any given firearm discovered during a lawful search was the firearm discharged in relation to the alleged incident would be unreasonable. Moreover, a reasonable officer could believe that the seizure of the firearms was necessary to prevent further assaults. *See Messerschmidt*, 565 U.S. at 549.

Defendants are entitled to qualified immunity on Thiel's claim of unlawful seizure of property in relation to the November 28 search.

     c.    <u>*Arrest*</u>

At the time of Thiel's arrest on November 28, the deputies had information from Murray's statement that Thiel allegedly shot at her when she left his residence earlier that night. When the deputies first spoke to Thiel about the allegation, Thiel denied it by stating that he was physically unable to shoot a firearm because of arthritis. With

additional discussion, however, Thiel admitted that he shot a firearm earlier in the day to scare cats from his porch.   With the victim's statement and Thiel's inconsistent statements, the deputies had arguable probable cause to believe that Thiel committed the criminal offense of unlawful use of a weapon.   *See Borgman*, 646 F.3d at 523 ("officer may 'rely on the veracity of information supplied by the victim of a crime.'") (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 817 (8th Cir. 2010)).

Because the facts and circumstances lead to a reasonable conclusion that a crime had been committed, probable cause existed to arrest Thiel.   *Fisher*, 619 F.3d at 817. At a minimum, given the victim's statements and Thiel's conflicting statements, there nevertheless was arguable probable cause to arrest Thiel.   *See Borgman*, 646 F.3d at 523 ("When an officer is faced with conflicting information that cannot be immediately resolved, . . . he may have arguable probable cause to arrest a suspect.").   Thiel's protest that he has a legal right to shoot his weapon is irrelevant to the qualified immunity analysis.   *Id.* at 524.

Accordingly, defendants are entitled to qualified immunity on Thiel's claim that his arrest on November 28, 2014, was unlawful.

3.     *Official Liability – Sheriff Korte*

With respect to Thiel's claim against Korte in his official capacity, the parties do not dispute that, with regard to the circumstances and the area of the challenged conduct in this case, Korte is the final policymaking official for the Pike County Sheriff's Department.   To succeed on his claim against Korte, therefore, Thiel must

- 22 -

show that a constitutional violation was committed pursuant to an official policy or custom made by Korte, and that such policy or custom was the moving force behind his injury. *Burlison v. Springfield Pub. Sch.*, 708 F.3d 1034, 1041 (8th Cir. 2013). *See also Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).

"[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A "custom" is an unofficial practice characterized by a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." *Id.* To establish Korte's official liability based on custom, Thiel bears a "heavy burden" to demonstrate not only the existence of this continuing, widespread, persistent pattern of unconstitutional misconduct, but also Korte's deliberate indifference to or tacit authorization of such conduct after having notice of the misconduct and, further, that the custom was the moving force behind the constitutional violation and Thiel's injuries. *Id.*; *see also Mick v. Raines*, 883 F.3d 1075, 1079-80 (8th Cir. 2018) (quoting *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016)).

Here, Thiel has not identified or presented any evidence that Korte established any official policy, custom, or practice that his deputies were to follow when conducting searches or seizures that resulted in a constitutional violation of Thiel's Fourth Amendment rights. Although Thiel contends that Korte testified to his official policy that "authorizes officers to use their discretion to exceed the scope of a warrant

and search any place and seize any items that officers feel is related to the warrant" (*see* Pltf.'s Stmnt. of Mat. Facts, ECF 44 at ¶ 20), Korte actually testified that the policy employed is to follow the standards established by Supreme Court precedent, state statute, and federal case law. (Korte Depo., ECF 44-8 at pp. 34-41.) As described by Korte, Supreme Court precedent and federal case law established the manner by which the deputies conducted the challenged searches and seizures here, including the plain view doctrine (*e.g.*, *Harris v. United States*, 390 U.S. 234, 236 (1968)); the lawful seizure of items if they are evidence of a crime or reasonably related to the crime for which the warrant issued (*e.g.*, *Stepnes*, 663 F.3d at 962); and the practical flexibility permitted regarding the description of items to be searched for and seized (*e.g.*, *United States v. Davis*, 542 F.2d 743, 745 (8th Cir. 1976); *United States v. Butler*, 793 F.2d 951, 953 (8th Cir. 1986) (listed item's component parts considered to be included)). Nor has Thiel presented any evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the Pike County deputy sheriffs, or that Korte was deliberately indifferent to or tacitly authorized such misconduct after receiving notice of it.

Because Thiel has not presented any evidence showing that a policy or custom established by Korte was the moving force behind the alleged Fourth Amendment violations, Korte is entitled to judgment as a matter of law on Thiel's official- capacity claims. *Wellman v. St. Louis Cty.*, 255 F. Supp. 3d 896, 903 (E.D. Mo. 2017).

B.    Procedural Due Process

Thiel claims that Korte's continuing refusal to return the property seized from the searches executed in October 2013 and November 2014 violates his procedural due process rights under the Fourteenth Amendment.    Because Thiel challenges Korte's conduct *after* his property was seized, I analyze this claim as one of a denial of post-deprivation process.    *Cf. Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001) (noting difference between claim challenging pre-deprivation process regarding initial seizure of property, and post-deprivation process regarding refusal to return seized property).

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.    As the Supreme Court has recognized, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."    *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Thiel's interest in his property seized in relation to the executed search warrants constitutes a valid, constitutionally protected property interest.    Consequently, the issue is what process Thiel is owed for the continued deprivation of that property. *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011).

Korte first argues that Thiel is not entitled to any post-deprivation process because the seized property is needed for an ongoing investigation.    Korte is correct

- 25 -

that law enforcement authorities are entitled to retain property with no further process where such retention "is justified by pending charges or an arrest warrant, . . . or if evidence is needed for an ongoing or proposed specific investigation." *Rodgers v. Knight*, 781 F.3d 932, 941 (8th Cir. 2015) (internal quotation marks and citation omitted). Korte has produced no evidence, however, of an ongoing investigation. When Korte filed this summary judgment motion in December 2018, the seized property had been in his custody for four to five years. No charges have been brought against Thiel in relation to the searches, the property seized, or the subject of the investigations. Korte's argument of ongoing investigation with nothing more does not show that he is entitled to summary judgment on this basis.

I agree with Korte, however, that Thiel's failure to pursue an available and adequate remedy under state law bars his due process claim.

The property seized during the two searches and logged on the evidence log was seized pursuant to validly issued search warrants. Thiel's pre-deprivation due process protections were thus subsumed within the Fourth Amendment's requirement of probable cause to issue the warrants. *See PPS, Inc. v. Faulkner Cty., Ark.*, 630 F.3d 1098, 1107 (8th Cir. 2011) (and cases cited therein). Accordingly, I focus on the due process protections regarding the second deprivation of property, that is, Korte's retention of Thiel's property after its seizure.

The parties do not dispute that Korte continues to retain Thiel's property pursuant to official policy. In *Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir.

2001), and *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011), the Eighth Circuit held that the availability of a post-deprivation remedy is not sufficient to satisfy due process if the continued retention of property is the result of policy rather than of a random and unauthorized act. Notably, in both cases, the available remedy at issue was a state tort action in replevin. In *Mickelson v. County of Ramsey*, 823 F.3d 918 (8th Cir. 2016), however, the Eighth Circuit expounded on this holding and explained that while the mere *availability* of post-deprivation processes is insufficient to satisfy due process, a constitutionally *adequate* post-deprivation process may suffice. *Id.* at 927-28. Indeed, the court explained that its decision in *Walters* "turned on" the fact that the only available post-deprivation remedy at issue in that case came in the form of a replevin action in tort, which, by its "inherently 'lengthy and speculative' nature," was constitutionally inadequate . *Mickelson*, 823 F.3d at 928 (quoting *Walters*, 660 F.3d at 313-14 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436-37 (1982))). Accordingly, under *Mickelson*, as long as a constitutionally adequate post-deprivation process exists, due process is satisfied – even when the deprivation is pursuant to official policy. *Id.* at 928-29.

Here, Sheriff Korte testified that his office operates under General Orders that define the policies and procedures of the office. For circumstances not covered by a General Order, the terms of a separate Manual govern. The Manual was in place before Sheriff Korte took office. (Korte Depo., ECF 44-8 at pp. 12-13.) No General Order covers property seized as a result of a search warrant, so the office follows the

relevant policies and procedures as set out in the Manual, including the policy that "all property released shall be by the Sheriff or Chief Deputy." (*Id.* at pp. 15-16, 22.) Korte testified that, in practice, he and his office engage in the following procedure regarding release of property: 1) when his office believes that property they have in possession is no longer needed, he notifies the prosecutor and requests to release the property; 2) the prosecutor reviews the request; 3) if the prosecutor approves the request, the s/he will forward it to a judge to be signed; 4) if the prosecutor denies the request, the property continues to be retained by the sheriff as custodian. (*Id.* at 22-25.) The sheriff will not release property until authorized by a court. (*Id.* at 28-29.) (*See also* Korte Affid., ECF 41-8 at ¶¶ 7-8.) Thiel construes this policy as authorizing officers to refuse to return property for the sole reason that the prosecutor wants to keep the property. (*See* Pltf.'s Resp. to Defts.' Stmnt. of Mat. Facts, ECF 49 at ¶¶ 37-39.)

On the record before the Court, I cannot say that the sheriff's post-deprivation policy is constitutionally adequate to satisfy due process. As described, whether to initiate the process to return seized property appears to be based on the sheriff's subjective belief that the property is no longer needed. While the prosecutor may make that legal determination, it appears that that determination is triggered only at the sheriff's behest. There does not appear to be any mechanism under the policy by which a property owner may seek redress for the continued retention of property or even to start the process. Indeed, Sheriff Korte attests that when a person calls seeking

to recover their property, they are referred to the prosecuting attorney to make the inquiry. (Korte Affid., ECF 41-8 at ¶ 6.) But under the stated policy, the prosecutor does not act until prompted by the sheriff.[7] In short, this policy does not appear to be a "remedy" available to a property owner; and even if it were, its subjective nature can lead to "lengthy and speculative" results, as demonstrated by the four-to-five-year retention of Thiel's property in this case with no evidence of an ongoing investigation or of charges being filed.

The inadequacy of the sheriff's post-deprivation policy does not end the inquiry, however. Missouri law provides another process by which a property owner may seek to recover seized property. Under Mo. Rev. Stat. § 542.301, a person claiming the right to possession of property that is in the custody of an officer as the result of any seizure and which has not been forfeited pursuant to any other provisions of law may file a motion in court praying that the court declare the property not subject to forfeiture and order it delivered to the moving party. Mo. Rev. Stat. § 542.301.2. The statute provides that, upon a claimant's filing of such a motion, all interested persons – including the moving party – are provided notice and given an opportunity to appear at a hearing and be heard on the person's claim to the property. Mo. Rev. Stat. § 542.301.3. Any party may appeal the court's judgment on the disposition of the

---

[7] On May 2, 2018, Korte submitted requests to the prosecutor for disposal of property or evidence forms with respect to the property seized from Thiel's residence that was still being held at the sheriff's office. (Korte Affid., ECF 41-8 at ¶ 9.) No one has presented any evidence to the Court regarding what, if anything, occurred as a result of these requests.

property.   Mo. Rev. Stat. § 542.301.14.   No individualized notice of this process is required, given that it is established by a published, generally available state statute and case law.   *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999).   "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him."   *Id.*

I agree with earlier court decisions that this statutory procedure is a constitutionally adequate process by which a person may pursue claims of ownership and right to possession of seized property in Missouri.   *See Williams v. Armontrout*, 679 F. Supp. 916, 940 (W.D. Mo. 1988) (subsequent history omitted); *Maupins v. Garrison*, No. 86-1022-CV-W-9, 1988 WL 125709, at *6 (W.D. Mo. Sept. 14, 1988) (§ 542.301 provides adequate post-deprivation remedy under Missouri law); *cf. Monson v. Mulligan*, 950 F. Supp. 262, 267 (E.D. Mo. 1996) (no due process violation in retention of seized property where property owner did not invoke state processes for return, including process under § 542.301).   And Thiel has presented nothing to the Court by way of evidence or argument showing that this procedure fails to meet the fundamental requirements of due process in this case.   *Mathews*, 424 U.S. at 333 (fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("(D)ue process is flexible and calls for such procedural protections as the particular situation demands.").   Indeed, Thiel does not argue that this statutory process is inadequate.   Instead, he contends that under *Walters* and *Lathon*, he is not required to

- 30 -

pursue *any* post-deprivation remedy.   *Lathon* and *Walters* are distinguishable, however, in that the only available remedy in those cases was an action in replevin, which was determined to be inadequate.   To the extent Thiel argues that § 542.301 nevertheless is not applicable here because his property was unlawfully seized and he was never charged with a crime, the plain language of the statute is not so limiting.

In sum, Sheriff Korte retained Thiel's property pursuant to his office's established policy.   While this policy may be constitutionally inadequate, Thiel had available to him another, constitutionally adequate remedy under Mo. Rev. Stat. § 542.301 by which he could seek return of the property.   Thiel admittedly did not invoke this process.   "Absent his exhaustion of the available process, we cannot know whether the current system would fail to yield a return" of his property.   *Mickelson*, 823 F.3d at 930.   In view of Thiel's inability to demonstrate any inadequacies in the process because of his failure to use it, his due process claim fails as a matter of law. *Wellman*, 255 F. Supp. 3d at 908.

To the extent Thiel claims that the property Korte continues to retain is that which is not listed on the seized evidence log, this alleged conduct falls within the "random and unauthorized act" category of deprivation.[8]   Where a state provides a post-deprivation remedy by which an aggrieved party can seek relief for the tortious deprivation of a protected interest resulting from a random and unauthorized act by a

---

[8] Korte testified to his official policy that all items of personal property that are seized are to be listed on an evidence inventory log, and that such policy was followed here.   (Korte Depo., ECF 41-3 at pp. 14-20.)

state employee, due process is satisfied. *Parratt v. Taylor*, 451 U.S. 527, 540-41

(1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31

(1986). For such claims of tortious deprivation of property, Missouri provides an

adequate post-deprivation remedy of replevin. *Clark v. Kansas City, Mo. Sch. Dist.*,

375 F.3d 698, (8th Cir. 2004) Accordingly, because the state provides an adequate tort

remedy for the interest at issue, due process is satisfied and Thiel's claim fails. *Id.; cf.*

*Harrington v. City of Council Bluffs, Iowa,* 678 F.3d 676, 680 n.4 (8th Cir. 2012)

(procedural due process claim not available because state provides tort remedy for

interest at issue).

### Conclusion

For the reasons set out above, defendants are entitled to summary judgment on

Thiel's constitutional claims. Because I will dismiss all claims over which this Court

has original jurisdiction, I decline to exercise supplemental jurisdiction over Thiel's

state law claim. 28 U.S.C. § 1367(c)(3). *See also Anderson v. Franklin Cnty., Mo.*,

192 F.3d 1125, 1131 (8th Cir. 1999); *American Civil Liberties Union v. City of*

*Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (when state and federal claims are

joined and all federal claims are dismissed on a motion for summary judgment, state

claims are ordinarily dismissed without prejudice); *Willman v. Heartland Hosp. E.*, 34

F.3d 605, 613-14 (8th Cir. 1994) (same).

Accordingly, for all of the reasons set out in this Memorandum and Order,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment

[39] is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff Richard Scott Thiel's Motion for Partial Summary Judgment [42] is **DENIED.**

**IT IS FURTHER ORDERED** that Richard Scott Thiel's claims brought under 42 U.S.C. § 1983 and raised in Counts 1 and 2 of his First Amended Complaint are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Richard Scott Thiel's claim brought under Missouri law and raised in Count 3 of his First Amended Complaint is dismissed without prejudice.

An appropriate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 20th day of March, 2019.